**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW HAMPSHIRE**

**THOMAS GRANT,** *individually, and on behalf of all others similarly situated,*

*Plaintiff,*

v.

**ALLSTATE INSURANCE COMPANY,**

*Defendant.*

Civil Action No.

Jury Trial Demanded

## CLASS-ACTION COMPLAINT

Plaintiff, Thomas Grant ("Plaintiff" or "Grant"), by and through his undersigned attorneys, files this Complaint against Defendant, Allstate Insurance Company ("Allstate" or "Defendant"). In support thereof, Plaintiff states as follows:

## NATURE OF THE CASE

1. Plaintiff Thomas Grant brings this action, seeking damages and any other available legal or equitable remedies resulting from the unlawful actions of Defendant. Defendant violated Plaintiff's rights by making two or more solicitation calls to residential subscribers whose numbers were registered on the Do Not Call Registry. Those acts and omissions, which are described at length herein, were in violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, *et seq.* and the TCPA's corresponding regulations.

**BACKGROUND ON THE TCPA**

2. In 1991, after passage with bipartisan support in Congress, President George H.W. Bush signed the TCPA into law, to protect consumers' privacy rights- specifically, the right to be left alone from unwanted telemarketing calls.

3. A leading sponsor of the TCPA described telemarketing "robocalls" the "scourge of modern civilization." 137 Cong. Rec. 30821 (1991).

4. The TCPA, through the accompanying FCC regulations, 47 C.F.R. § 64.1200(c) et seq., affords special protections for "residential subscribers" who register their phone numbers on the National Do Not Call Registry.

5. Since 2003, persons who register phone numbers on the Do Not Call registry have been considered to be "residential subscribers" for the purpose of 227(c)(5) and the Do Not Call registry. *In Re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C. Rcd. 14014, 14039 (2003) ("we will presume wireless subscribers who ask to be put on the national do-not-call list to be 'residential subscribers.'")

6. 47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200(c) provide that each person who receives more than one call within a 12-month period on their phone, where that called party did not provide express written consent upon a clear and conspicuous disclosure from the telemarketer, after the phone number was registered on the National Do Not Call Registry for more than 31 days is entitled to recover a penalty of $500 per call, and up to $1,500 per call if the TCPA is willfully or knowingly violated.

7. Decades after the TCPA passed into law, it is still unfortunately the case that "month after month, unwanted telemarketing calls and texts top the list of consumer complaints

received by the Federal Communications Commission." Omnibus TCPA Order, 30 FCC Rcd. 7961, 7964 (F.C.C. July 10, 2015).

8. In fact, in 2021 alone, there were over five million complaints from Americans to the FTC about unwanted telemarketing calls. Federal Trade Comm'n, *FTC Issues Biennial Report to Congress on the National Do Not Call Registry* (Jan. 5, 2022), https://www.ftc.gov/news-events/news/press-releases2022/01/ftc-issues-biennial-report-congress-national-do-not-call-registry.

9. The private right of enforcement of the TCPA is critical to stopping the proliferation of these unwanted telemarketing calls. For example, while the Federal Communications Commission levied over $200 million in penalties against telemarketers between 2015 and 2018, it collected less than $7,000 of that amount. *See* Sarah Krouse, *The FCC Has Fined Robocallers $208 Million. It's Collected $6,790*, The Wall Street Journal, March 28, 2019, https://www.wsj.com/articles/the-fcc-has-fined-robocallers-208-million-its-collected-6-790-11553770803.

**JURISDICTION AND VENUE**

10. This Court has subject-matter jurisdiction over the TCPA claims in this action under 28 U.S.C. § 1331, which grants this court original jurisdiction of all civil actions arising under the laws of the United States. See *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 386-87 (2012) (confirming that 28 U.S.C. § 1331 grants the United States district courts federal-question subject-matter jurisdiction to hear private civil suits under the TCPA).

11. This Court has personal jurisdiction over Defendant, as Defendant systematically conducts business in the State of New Hampshire.

12. Furthermore, Defendant placed calls from a New Hampshire-based "603" area code, to Grant on his phone which also bears a "603" area code.

13. Through those acts, as well as those detailed in this Complaint, Defendant knowingly and purposefully availed itself to the State of New Hampshire.

14. Grant has been a citizen and resident of this District at all times relevant to this Complaint, and received the calls at issue and experienced the associated harm within this District.

15. Accordingly, venue is proper under 28 U.S.C. § 1391(b)(2).

**PARTIES**

16. Plaintiff, Thomas Grant is a natural person who at all times relevant hereto resided in Hudson, NH 03051.

17. Plaintiff is a "person" as that term is defined by 47 U.S.C. §153(39).

18. Defendant Allstate is a Delaware corporation with a principal address of 3100 Sanders Road, Northbrook, IL 60062.

19. Defendant is a "person" as that term is defined by 47 U.S.C. §153(39).

20. Defendant acted through its agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers.

**FACTUAL ALLEGATIONS**

21. At all times relevant hereto, Plaintiff, Thomas Grant owned a landline telephone, the number for which was (603) XXX-0118.

22. Plaintiff registered that phone number on the Federal Do Not Call Registry on or around September 16, 2005 in order to obtain solitude from invasive and irritating telemarketing calls.

23. At all times relevant hereto, Plaintiff used the aforementioned telephone primarily for residential purposes, such as talking with friends and family.

24. Between December of 2025 and June of 2026, Defendant began a campaign of irritating telemarketing calls to Plaintiff, placing at least thirteen (13) phone calls soliciting home and automotive insurance Plaintiff did not want or need.

25. An inexhaustive list of calls made to Plaintiff is as follows:

| **Date** | **Time (EST)** | **Calling number** |
|---|---|---|
| 12/15/2025 | 9:59 am | 603-772-2220 |
| 12/16/2025 | 1:06 pm | 603-772-2220 |
| 12/17/2025 | 9:50 am | 603-772-2220 |
| 12/19/2025 | 12:08 pm | 603-772-2220 |
| 12/26/2025 | 12:56 pm | 603-772-2220 |
| 1/2/2026 | 3:30 pm | 603-772-2220 |
| 1/23/2026 | 10:44 am | 603-772-2220 |
| 1/30/2026 | 2:34 pm | 603-772-2220 |
| 2/10/2026 | 10:38 am | 603-772-2220 |
| 3/19/2026 | 10:45 am | 603-450-7168 |
| 5/18/2026 | 2:38 pm | 603-450-7168 |
| 5/28/2026 | 2:28 pm | 603-206-4723 |
| 6/4/2026 | 2:45 pm | 603-206-4723 |

26. Each and every call from the phone number 603-772-2220 displayed a caller ID of either “Allstate Ins Co” or “ALLSTATE INSURANCE.”

27. Each and every call from the phone numbers 603-450-7168 and 603-206-4723 displayed a caller ID of "CLARK ALLSTATE".

28. The phone number 603-772-2220 is associated with Ethan Clark, an authorized Allstate insurance agent operating out of Stratham, New Hampshire. Defendant's website lists Mr. Clark alongside that number at https://agents.allstate.com/ethan-clark-stratham-nh.html.

29. Furthermore, after Plaintiff declined the call on December 17, 2025 at 9:50 am EST, he received a voicemail which stated as follows:

> "Hi, I'm trying to reach Brenda. My name is Jacob. I work with the Ethan Clark Allstate Agency. We're a local insurance agency out of Stratham, NH and I'm reaching out because it looks like you inquired about getting a home and auto quote. You have several vehicles here and the address we have for you is a 3 Sheffield St. in Hudson, NH. The vehicles we have is a 2016 Audi, 2020 Hyundai and a 2024 Jeep. Again, we're just looking to see if we could save you money on insurance and put some money back in your pocket at the end of the month. Looking forward to speaking with you. If you want to give me a call back at 603-772-2220. Again, my name is Jacob and I hope you have a great rest of your day."

30. Additionally, Plaintiff answered the call on February 10, 2026 at 10:38am and was greeted by an individual who identified himself as "Jacob" with "Clark Allstate". "Jacob" stated that he wished to speak with 'Brenda' (the name of Plaintiff's wife), to which Plaintiff requested not to be called again and hung up.

31. Plaintiff also answered the call on March 19, 2026 at 10:45 am and was greeted by an individual who identified herself as "Kate" with "Clark Agency". Plaintiff again requested not to be called again and hung up.

32. From the foregoing, Plaintiff was able to determine that the calls were placed on behalf of Defendant Allstate by its agent, Ethan Clark.

33. These calls were not made for "emergency purposes," but rather for solicitation purposes.

34. Plaintiff did not have any pre-existing business relationship with Defendant, and was not interested in purchasing auto or home insurance.

35. Plaintiff did not provide Defendant with his prior express consent to be contacted for solicitation purposes.

36. Defendant knew, or should have known, that its calls were unwanted, as Plaintiff's phone number was registered on the Do-Not-Call List and Plaintiff requested not to be called on multiple occasions.

37. As a result of the foregoing, Plaintiff experienced frustration, annoyance, irritation and a sense that his privacy had been invaded by Defendant.

**DIRECT AND VICARIOUS LIABILITY**

38. Without the benefit of discovery, Plaintiff understands and therefore alleges Allstate placed the calls at issue through its agent, Ethan Clark.

39. However, if some or all of the calls were placed by other third-party/parties on behalf of Defendant, in the alternative, Defendant would nonetheless be vicariously liable for those calls.

40. On May 9, 2013, the FCC determined that telemarketers like Defendant cannot avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside of the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain relief. As the FTC noted, because "[s]ellers may have thousands of "independent" marketers,

> suing one or a few of them is unlikely to make a substantive difference for consumer privacy.

*In re: Dish Network, LLC,* 28 F.C.C. Rcd. 6574 at 6588 (May 9, 2013) (internal citations omitted).

41. Moreover, the May 2013 FCC ruling rejected a narrow view of TCPA liability, including the assertion that a seller's liability requires a finding of formal actual agency and immediate direction and control over third parties who place a telemarketing call. *Id*. at 6587 n. 107.

42. The evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593.

43. Allstate hired, encouraged, permitted, and enjoyed the benefits of mass telemarketing by its agents.

44. Allstate's contract with its agents provide it the ability to direct and control its agents, such as Ethan Clark's marketing activities.

45. Allstate controlled or had the right to control the marketing activities of those acting on its behalf, including Clark.

46. Moreover, Allstate manifested assent for Ethan Clark to market on its behalf by providing Clark with Allstate equipment and scripts and putting Mr. Clark on Allstate's webpage.

47. Clark had actual and/or apparent authority to act on behalf of Defendant.

48. Likewise, on information and belief, Defendant also ratified its agents (including Clark)'s violations of the TCPA by accepting leads and proceeds from sales initiated by unlawful telemarketing communications.

49. Defendant is not permitted under the law to outsource and contract its way out of liability by directing and benefitting from their agents' TCPA violations.

50. Allstate is directly liable for calls it placed to Plaintiff and the putative class. In addition and/or in the alternative, Allstate is vicariously liable for calls placed on its behalf.

## CLASS ALLEGATIONS

51. Pursuant to Federal Rule of Civil Procedure 23(a), (b)(2) and (b)(3), Plaintiff brings this lawsuit as a class action on behalf of himself and all others similarly situated. This action satisfies the requirements of numerosity, commonality, typicality, and adequacy of representation.

52. Plaintiff seeks to represent the following class:

> **National Do-Not-Call Registry (NDNC) Class:** All persons in the United States who received two or more telemarketing calls or voicemails to their telephone number within any 12-month period, while such number was registered with the National Do-Not-Call Registry for over thirty days, which were placed by or on behalf of Allstate, from four years prior to the date of this complaint through the date the Court certifies the class.

> **Ethan Clark NDNC Sub-Class:** All persons in the United States who received two or more telemarketing calls or voicemails to their telephone number within any 12-month period by or on behalf of Ethan Clark, while such number was registered with the National Do-Not-Call Registry for over thirty days, in connection with the attempted sale of Allstate insurance products, from four years prior to the date of this complaint through the date the Court certifies the class.

53. Excluded from the Class are any entity in which Defendant has a controlling interest or which has a controlling interest in Defendant, and Defendant's owners, affiliates, agents, legal representatives, predecessors, successors, assigns, and employees. Also excluded are the judge and staff to whom this case is assigned, and any member of the judge's immediate family. Plaintiff reserves the right to amend or modify the class definitions consistent with the record.

54. The putative class members' identities are readily ascertainable from Defendant's records or records within Defendant's control.

55. Plaintiff's claims are typical of the class members, as all are based on the substantially similar facts and the same legal theories.

56. Plaintiff will fairly and adequately protect the interests of the Class defined in this complaint. Plaintiff will fairly and adequately protect the interests of the class members insofar as Plaintiff has no interests that are averse to the absent class members. Plaintiff is committed to vigorously litigating this matter.

57. Plaintiff has retained counsel with experience in handling consumer lawsuits, complex legal issues, and class actions, and neither the Plaintiff nor his attorneys have any interests which might cause them not to vigorously pursue this action.

58. This action has been brought, and may properly be maintained, as a class action pursuant to the provisions of Rule 23 of the Federal Rules Civil Procedure because there is a well-defined community interest in the litigation.

59. Class Members are so numerous that the individual joinder of all class members is impracticable. There are no likely difficulties to be encountered in managing this case as a class action.

60. Common questions of law and fact exist to all Class Members and predominate over questions affecting only individual Class members. Common legal and factual questions include, but are not limited to the following:

a. Whether Defendant scrubs or otherwise consult the federal Do Not Call registry before calling numbers;

b. Whether the calls were "solicitations" as defined by 47 U.S.C. § 227(a)(4);

c. Whether Defendant employs proper mechanisms to obtain consumers' prior express consent before sending marketing messages and/or making telemarketing calls;

d. Whether Defendant's conduct violates 47 U.S.C. § 227 and the corresponding rules and regulations implementing the TCPA; and

e. Whether Plaintiff and the putative class members are entitled to increased damages for each violation based on the willfulness of Defendant's conduct.

61. Plaintiff and the putative class members have claims arising out of Defendant's uniform course of conduct, namely improperly placing solicitation calls to Plaintiff and the putative class members.

62. The class action mechanism is superior to other available means for the fair and efficient adjudication of this case. Each individual class member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendant's liability. Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case. Individualized litigation also presents a potential for inconsistent and contradictory judgments.

63. In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendant's liability. Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

64. Based on discovery and further investigation, Plaintiff may, in addition to moving for class certification, use modified definitions of the class, class claims, and the class period, and/or seek class certification only as to particular issues as permitted under Rule 23. Such

modified definitions may be more expansive to include consumers excluded from the foregoing definitions.

65. Based on information and belief, Defendant continues to engage in the improper practices discussed above. Injunctive relief is necessary and appropriate to enjoin Defendant's conduct and to prevent irreparable harm to Plaintiff and Class members for which they have no adequate remedy at law.

**COUNT I**
**DEFENDANT VIOLATED 47 US.C. § 227(c)(5) and 47 C.F.R. § 64.1200(c)**

66. Plaintiff incorporates by reference the allegations of the previous paragraphs as if fully stated in this Count.

67. Plaintiff brings this count individually and on behalf of all others similarly situated.

68. The TCPA provides that it is a violation of the law for a person whose phone number is registered on the National Do Not Call Registry to receive more than one solicitation call on their phone "within any 12-month period by or on behalf of the same entity." *See* 47 U.S.C. §§ 227(c)(1), (c)(5); 47 C.F.R. § 64.1200(c)(ii).

69. The penalty for each call made in violation of the TCPA's restrictions on placing telemarketing calls to numbers registered on the National Do Not Call Registry is $500 per violation and up to $1,500 per violation if the violation is determined to be willful. *See* 47 U.S.C. §§ 227(c)(5).

70. In addition, the TCPA allows the Court to enjoin Defendant's violations of the TCPA's regulations prohibiting calls to phone numbers registered on the National Do Not Call Registry. *See* 47 U.S.C. §§ 227(c)(5)(A).

71. By calling Plaintiff after his number was registered on the National Do Not Call Registry, Defendant violated the TCPA, including but not limited to, 47 U.S.C. §§ 227(c)(1) and the TCPA's corresponding regulations.

72. Defendant knew or should have known that Plaintiff's phone number was registered on the Do Not Call Registry.

73. Plaintiff is entitled to damages of $500.00 per violation for each call placed by Defendant, and up to $1,500.00 per violation if the Court finds Defendant willfully violated the TCPA.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, Thomas Grant, individually, and or behalf of all other similarly situated, requests the Court grant the following relief against Defendant, Allstate Insurance Company:

a. Enter an order against Defendant pursuant to Federal Rule of Civil Procedure 23(a), (b)(2) and (b)(3), certifying this action as a class action and appointing Plaintiff as the class representatives for the NDNC Class;

b. Enter an order appointing Kimmel & Silverman, P.C. as class counsel for the NDNC Class;

c. Enter judgment in favor of Plaintiff and the NDNC Class for all damages available under the TCPA, including actual and statutory damages per violation of 47 U.S.C. § 227(c) consistent with proof at trial;

d. Award Plaintiff and the NDNC Class such further and other relief the Court deems just and appropriate.

## **DEMAND FOR JURY TRIAL**

PLEASE TAKE NOTICE that Plaintiff demands a jury trial in this case.

Respectfully submitted,

By: *<u>/s/ Angela K. Troccoli</u>*
Angela K. Troccoli, Esquire, #18539

Kimmel & Silverman, P.C.
30 East Butler Ave.
Ambler, PA 19002
401-764-5566
Facsimile: (877) 788-2864
Email: atroccoli@creditlaw.com